UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

**JUAN FUENTES SANTIAGO,**
Plaintiff,

v.

**CIVIL NO. 03-2181 (DRD)**

**EMPRESAS STEWART AND CIAS**

## OPINION & ORDER

On November 03, 2003, Juan Fuentes Santiago, hereafter Fuentes or plaintiff, instituted the present action in which he alleges discrimination by reason of age, and disability. He also requests reasonable accommodation, and further alleges retaliation for having plaintiff filed charges against defendant in the Equal Employment Opportunity Commission. For the acts of discrimination perpetrated against him, Fuentes seeks relief pursuant to the American with Disabilities Act of 1990, 42 U.S.C. §12117, hereafter ADA, and the Age Discrimination in Employment Act, 29 U.S.C. §621, hereafter ADEA, Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-5, and their local counter parts – Law 44 of June 2, 1985; Law 100 of June 30, 1959, 29 P.R. Laws Ann. § 146; Law 115 of December 20, 1991, 29 P.R. Laws Ann. § 194, as well as local Law 80 of May 30, 1976, 29 P.R. Laws Ann. § 185(a), and Law 81 of July 27, 1996, P.R. Laws Ann. § 1401.

Plaintiff, thus, asks the Court to: 1) enter a declaratory judgment declaring defendant's actions in violation of the provisions of ADA and ADEA; 2) to reinstate plaintiff ; 3) to award plaintiff back pay, front pay, lost benefits, doble damages, and liquidated damages; 4) in addition, to award him damages for mental anguish, emotional distress and loss of self-esteem, and, finally; 5) the cost of this action together with reasonable attorney's fees.

The facts that originated the controversy in the above captioned case are as follow. On

February 24th, 1997 plaintiff began working for Empresas Stewart - Funerarias,[1] hereinafter "Empresas Stewart" or defendant, as an embalmer and remained in that position until July 25, 2001. As an embalmer, Fuentes was constantly exposed to a chemical product called Formaldehyde. During his employment, Fuentes developed, and was diagnosed, by the State Insurance Fund (SIF) on December 1999 with a condition known as contact dermatitis. On August 3, 2001 – almost two years after having been diagnosed – Empresas Stewart removed Fuentes from his position as an embalmer and transferred him to a position that did not require contact with Formaldehyde. The transfer was conditioned to Fuentes obtaining a license from the Puerto Rico Public Service Commission (PSC). Fuentes did not obtain said license. On March 15, 2002 , Fuentes filed a charge of discrimination before the Anti-discrimination Unit of the Department of Labor and the Equal Employment Opportunity Commission. Stewart terminated Fuentes's employment on May 5, 2002.

The relevant procedural history of the case is as follows. On February 10, 2005, defendant filed a *Motion for Summary Judgement* (Docket No. 33) and its corresponding *Statement of Uncontested Facts* (Docket No. 32). In response, plaintiff filed a *Memorandum in Opposition to Motion for Summary Judgment* with its *Supplement Statement of Fact* on March 14, 2005. On April 1, 2005, defendant filed a *Motion to Strike* (Docket 41) both documents. On April 11, 2005, the Court denied without prejudice plaintiff's *Memorandum* and *Supplement Statement of Facts*, and, in addition, granted plaintiff five (5) days to re-file. Accordingly, the Court declared defendant's *Motion to Strike* moot. Plaintiff re-filed his *Memorandum in Opposition to Motion for Summary*

---

[1] Even thought defendant has accepted service of process under the name *Empresas Stewart and Cias*, defendant contests that its real name is *Empresas Stewart -Funeraria*. To avoid any disagreement we will refer to defendant as Empresas Stewart.

*Judgment* with its *Supplement Statement of Fact* on April 15, 2005. Plaintiff's actions were followed by defendant's filing of a *Second Motion to Strike*. Finally, on May 26, 2005, defendant's *Motion for Summary Judgement* together with his *Second Motion to Strike* were referred to Magistrate Judge Gustavo Gelpí. On June 30, 2005, the Magistrate Judge entered an *Order* (Docket No. 56) wherein he granted defendants's *Second Motion to Strike*, thus striking Plaintiff's statement of uncontested facts, and a *Report and Recommendation* recommending that defendant's *Motion for Summary Judgment* be granted in part and denied in part. Both parties duly objected the Magistrate's Report and Recommendation. (Docket Nos. 58, and 60, respectively).

## I. Magistrate's Report and Recommendation

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV. P. 72(b); Rule Local Rule 72.1(b). *See* Mathews v. Weber, 423 U.S. 261 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72.2(a)-(b); FED.R.CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), where pertinent, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*See* 28 U.S.C. § 636(b)(1).

Provided that both parties have objected the determinations addressed by the Magistrate Judge, the Court shall make a <u>de novo</u> determination of the RR.

## II. Summary Judgment

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©.  *See* Celotex Corp v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. *See* Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, at 187; McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (the Court must look behind the facade of the pleadings alleged in the complaint, in this case the *Third Amended Complaint* (Docket No. 59) and examine the parties proof in order to determine whether a trial is required.). Furthermore, a fact is "material" if it potentially could affect the suit's outcome. *See* Id.  An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. *See* Id. The Court must

review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000).

This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *See* Reeves, id. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood[.]" Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). "The Court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." Id. An absence of evidence on a critical issue weighs against the party –be it the movant or the non-movant– who bears the burden of proof on that issue at trial. *See* Perez v. Volvo Corporation, 247 F. 3d at 310; *see also* Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). Accordingly, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (*citations omitted*).

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Company v. Hayes, 116 F.3d 957 at 959-60 (1st Cir. 1997). In other words, the court must construe the record and all

reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* Suarez v. Pueblo Int'l, Inc. 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; *see also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate**, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added). The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is nonetheless "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991); *see also* Lopez v. Corporacion Azucarera de Puerto Rico, 938 f.2d 1510, 1517 (1st Cir. 1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir. 1991) (discussing unopposed motion for summary judgment). Notwithstanding, **a party that fails to oppose a motion for summary judgment, does so at its own risk and peril**. *See e.g.* Corrada Betances v. Sea-Land Services, Inc., 248 F.3d 40, 43 (1st Cir. 2001); Herbert v. Wicklund, 744 F.2d 218, 233 (1st Cir. 1994). However, even though that there is no opposition on file to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction to the party who fails to oppose. *See* De la Vega v. San Juan Star, 377 F. 3d 111 (1st Cir., 2004).

### III. The Americans with Disabilities Act of 1990

ADA is the federal civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); Jacques v. Clean-Up Group, 96 F.3d 506, 510 (1st Cir. 1996); Katz v. City Metal Co., 87 F.3d 26, 30 (1st Cir. 1996); Grenier v. Cynamid Plastics, Inc., 70 F.3d 667, 671 (1st Cir. 1995). In the employment context, the ADA prohibits a "covered entity" (defined as 'a person engaged in an industry affecting commerce who has 15 or more employees') from 'discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); Katz, 87 F.3d at 30; Grenier v. Cyanamid Plastics, Inc., 70 F.3d at 671. Regulations approved under the statute provide that it is unlawful for a covered entity to discriminate on the basis of "disability", against a "qualified individual with a disability", in regards to, for instance, job assignments. *See* Jacques, 96 F.3d at 511; 29 C.F.R., Ch. XIV § 1630.4(d). In an effort to eliminate discrimination against individuals with disabilities, the statute prohibits employers from discriminating against "a qualified individual with a disability because of the disability." Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 14 (1997).

Plaintiff may utilize three methods to establish a claim of disability, as set forth in the First Circuit Court cases of, Jacques, 96 F.3d at 511. *See also* Bailey v. Georgia-Pacific Corporation, 306 F.3d at 1167. Of those three methods, Plaintiff has, under the circumstantial or preponderance of evidence approach, two methods of proving an ADA claim, i.e., the statutory framework method, or the *McDonnell Douglas* burden-shifting framework. The primary question presented in the instant case is whether Plaintiff was disabled within the meaning of the Act, at the time he sought reasonable accommodation from Empresas Stewart. The Court construes Plaintiff's ADA claim, under the

statutory framework method, or "first method"as recognized in Jacques.[2]

### III(A) Statutory Framework Method (First Method):

To establish a claim of disability discrimination under the ADA, a plaintiff must prove three things, by a preponderance of the evidence:

**First**, **that he [or she] was disabled within the meaning of the Act.** As to the term **"being disabled within the meaning of the Act"**, (first prong of the test), the employee has to prove, by a preponderance of the evidence, that: **(A)** he [she] has a physical or mental impairment that substantially limits one or more of his [her] major life activities; **(B)** he[she] has a record of such impairment; or **(C)** he [she] is being regarded [by the employer] as having such an impairment. See, Bailey v. Georgia-Pacific Corporation, 306 F.3d 1162, 1166 (1st Cir. 2002); 42 U.S.C. § 12102(2); Carroll v. Xerox, 294 F.3d 231, 237 (1st Cir. 2002). Only one of the ADA's definitions of "disability" is pertinent here: Alamo claims that he suffered from a physical or mental impairment "that disabled him" (Docket No. 1, ¶ 19). The Court hence shall determine whether he was a disabled protected individual pursuant to the statute (subsection **(A)**), entitled to reasonable accommodation. The Court must initially consider whether Plaintiff's allegations pass muster, under the provisions of the statute, and whether his physical condition qualified him as a disabled individual.

The Court's consideration of subsection **(A)** of the definition proceeds, in turn, in three steps. Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202 (1998). A **three-part analysis** is applied when considering (a), whether the plaintiff has a physical or mental impairment that substantially

---

[2] Second Method: "A plaintiff may also indirectly prove his or her case 'by using the *prima facie* case and burden shifting method that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)'." Katz, 87 F.3d at n.2 (citations omitted); *see* Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 162-63 (5th Cir. 1996) (citations omitted).

Third Method: If Plaintiff has direct evidence of discrimination for the adverse employment decision, the burden of proving the alleged acts of discrimination, may be accomplished by utilizing said direct evidence. See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989).

limits one or more of his [her] major life activities. *First*, the Court must: consider whether plaintiff's condition constitutes a mental or physical impairment. *Second*, the Court identifies the life activity upon which Plaintiff relies, and determines whether it constitutes a major life activity under the ADA. *Third*, tying the two statutory phrases together, the Court must ask whether the impairment substantially limited the major life activity. Bragdon, 524 U.S. at 631; Carroll, 294 F.3d at 238; Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-240 (1st Cir. 2001).

Whether a person has a disability under the ADA is an individualized inquiry, Sutton v. United Air Lines, 527 U.S. 471, 483, 119 S.Ct. 2139 (1999),[3] and Plaintiff has the burden of establishing each of the above referred elements. Bailey, 306 F.3d at 1167. The determination of whether an individual has a disability is based on the effect of that impairment on the life of the individual, taking into consideration that some impairments may be disabling for particular individuals but not for others. 29 C.F.R. § 1630, App. at 402; Katz, 87 F.3d at 32; quoting Chandler v. City of Dallas, 2 F.3d 1385, 1396 (5th Cir. 1995) (recognizing that "the effect of a given type of impairment...can vary widely from individual to individual").

Our analysis must begin by determining if Fuentes qualifies for the protection afforded by ADA to the disabled. As amply discussed above, in order for Fuentes to be considered disabled under the ADA, he must show: (A) that he suffers from "a physical or mental impairment that substantially limits one or more of his major life activities," (B) that he has "a record of such impairment," or (C) that he has "been regarded as having such an impairment." 42 U.S.C. §

---

[3] Considering that the ADA defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), "makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner". Toyota v. Williams, 534 U.S. at 198; Sutton, 527 U.S. at 483; Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 119 S.Ct. 2162 (1999); Bragdon, 52 U.S. at 641-642.

12102(2).  Fuentes purports that his major life activities of working, sleeping, eating, concentrating, driving, exercising, and performing household chores were substantially limited by the depression resultant from the dermatitis.  It must be noted, however, that the only evidence proffered by plaintiff in support of his allegation that he suffered from a sever depression is his own Sworn Statement.  The court agrees with the Magistrate's conclusion stating that, even though Plaintiff vehemently insists in his sworn statement that his dermatitis and depression substantially limit his major life activities, he failed to proffer any medical evidence whatsoever to that effect.  Given that there is no evidence in the record that could possibly be used by plaintiff to move the Court that he suffered from a sever depression to the extent of affecting his major life activities, or that his physical impairment is, in fact, contemplated by the ADA as a disability, the Court is not convinced that the Magistrate's recommendation was erroneous.  *See* Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 114-15 (1st Cir. 2004).  Moreover, it was not until plaintiff objected the Magistrate's Report and Recommendation that the "severe depression" condition first arose in the instant case.  Accordingly, the Court completely agrees with the Magistrate's finding that insufficient evidence has been set forth to support plaintiff's allegation of disability under the Act.  In fact, no medical evidence has been presented to the Court to evidence plaintiff's limited major life activity due to his allergy to formaldehyde.  *See* Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002) (holding that major life activities are those of central importance to daily life).  Moreover, the Magistrate was correct in concluding that not being able to work with formaldehyde **only** impairs his ability to perform his job as an embalmer – issue quite insufficient to garner protection pursuant to ADA.  Id.

The Court cannot assume that Plaintiff's alleged condition substantially limits his ability to work without evidence to support such contention.  Even if Plaintiff encounters physical discomfort

in the performance of certain tasks at his current employment, this fact alone is not enough to support a finding that Plaintiff's condition amounts to a disability that substantially limits his capacity to work. Plaintiff has failed to produce **any evidence** to support that his dermatitis or his alleged severe depression satisfied the requirements of 29 C.F.R. § 1630.2(j)(3). If anything, it stems from the record that plaintiff was fully discharged by the State Insurance Fund. For the Court to simply infer that a person with dermatitis is limited in some life activity is against the very mission of the statute.[4] Plaintiff's conglomerate of pleadings and memoranda is devoid of precedents to support his allegations and lacks any evidence from which a reasonable jury could determine that he was actually disabled for the purposes of the ADA.

Accordingly, because Plaintiff falls short of the requirements under the ADA to be considered a qualified individual with a disability, he is not entitled to protection under the statute. Thus, the Court **ADOPTS** the Magistrate's recommendation and **DISMISSES WITH PREJUDICE** Plaintiff's claim under the ADA. Having now determined that Plaintiff is not a disabled individual, Fuentes's reasonable accommodation cause of action is also **DISMISSED WITH PREJUDICE** – in order to survive a summary judgment regarding a reasonable accommodation claim, plaintiffs are to first present evidence of disability within the meaning of the ADA. *See* Estades Negroni v. Associates Corp. of North America, 377 F.3d 58, 63 (1st Cir. 2004). Moreover, even if, *in arguendo*, this Court were to conclude that Empresas Stewart did consider Fuentes a disabled person when they affirmatively decided to temporarily transfer him, and, thus, reasonably accommodate him, to the "funeral attendant" position – a position that had the neutral requirement to acquire the PSC (Public Service Commission) license and was also neutrally applied to all employees holding said position

---

[4] *See* Vega Rodriguez v. Locitite Puerto Rico, Inc., 967 F.Supp. at 658, 653 (D.P.R. 1997) (for the same proposition regarding a Lupus condition).

Case 3:03-cv-02181-DRD   Document 65   Filed 09/22/05   Page 12 of 18

that chauffeured any of Empresas Stewart's hearses – Plaintiff continuously and consistently refused to comply with the requirement of his new temporary position regardless of the multiple opportunities and extended deadlines provided by Defendant for Plaintiff to do so.  Hence, Fuentes refused to comply with a reasonable request neutrally applied which would have granted them a potential reasonable accommodation.

### IV.  Retaliation

In addition to the discrimination charges, Plaintiff's also alleges that Stewart took retaliatory actions against him for having filed charges against defendant with the Department of Labor and the Equal Employment Opportunity Commission.  Title 42 of the United State Code in its section 12203 establishes that: "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter o because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter."  In order for Plaintiff to bring a claim of retaliation he must show: "(1) that he or she was engaged in protected conduct; (2) that he or she was discharged [or suffered an adverse employment action], and; (3) that there was a casual connection between the discharge and the conduct."  Sifre v. Department of Health, 38 F. Supp.2d 91(1st Cir. 1999); *see also* Che v. Massachusetts Bay Transportaion Authority, 342 F.3d 31, 37 (1st Cir. 2003); Hernandez Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998); Solileau v. Guilford of Maine, Inc., 105 F.3d 12 (1st Cir. 1997).  It is also important to point out that "[a] plaintiff need not have succeeded on his or her claim of disability to assert a claim of retaliation."  Oliveras Sifre v. Department of Health, 38 F. Supp.2d at 102.  *See also* Mesnik v. General Elec., Co., 950 F.2d 816, 827 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); Soileau v. Guilford of Main, 105 F.3d 12, 16 (1st Cir. 1997).

It is undisputed that Fuentes engaged in protected conduct when, on March 15, 2002, he brought charges of discrimination against Empresas Stewart. It is equally unquestionable that Fuentes was subject of an adverse employment action when Empresas Stewart terminated his employment on May 5, 2002. However disagreement arises as to whether a causal connection exist between the discharge and the protected conduct engaged in by plaintiff. Fuentes argues that he was terminated from his employment only fifty one (51) days after he filed the charges against Empresas Stewart. Empresas Stewart, on the other hand, contests that it was not until May 25, 2002, twenty (20) days **after** Plaintiff was discharged, that it received the notice from the Department of Labor informing of the charges against it. Moreover, Empresas Stewart proffers that Fuents's discharge was based on his deficient performance and failure to comply with certain requirements. To this effect, defendant submitted an *Unsworn Declaration Under Penalty of Perjury* by Empresas Stewart's Regional Human Resources Director, Diana Ledesma, which asserts that it "appears from Fuentes's record that Stewart did not receive copy of his March 15, 2002 discrimination complaint before the Anti-Discrimination Unit until May 25, 2002." (Defendant's Exhibit I). However, Fuentes, contests said affirmation by presenting his own sworn statement alleging that he personally handed to two of his supervisors a copy of the discrimination charge "immediately after filing the charge of discrimination". (Plaintiff's Exhibit I). Moreover, Plaintiff limits his discussion in his objections to the Report and Recommendation to assuring the Court that Empresas Stewart's reasons for terminating his employment were pretextual and that he has established a *prima facie* case of retaliaton.

Having there presented an issue of material fact as to when Empresas Stewart was actually informed of the charge, there is a *prima facie* case of retaliation. Thus, the burden shifts to Empresas Stewart to articulate a non-discriminatory reason for its decision to terminate Fuentes from his

employment. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Consequently, Empresas Stewart avers that Fuentes was discharged because of his failure to obtain a license from the Public Service Commission required for his position as a funeral attendant along with various instances of insubordination. It is uncontested that Plaintiff did not acquire said license even when his employer provided him with numerous extensions of time to do so. It is also uncontested that said requirement was imposed on other similarly situated employees. (Defendant's Exhibit H). This moves the Court to conclude that Defendant has, in fact, presented sufficient evidence to support their proffered non-discriminatory reason for discharging Plaintiff. Accordingly, Defendant has shifted the burden back onto Plaintiff to show that said proffered reason was merely a pretext. *See* Calero Cerezo v. United States, 355 F.3d 6, 26 (1st Cir. 2004).

To sustain his position that Empresas Stewart's reasoning was only a pretext, Fuentes claims that one of the general managers at one of the funeral homes stated on the record that such a requirement was unnecessary. The Court notes that David Ruiz's **unsworn** statement – said general manager – does not contain such an assertion or that it was imposed on Fuentes to harass and later discharge Plaintiff. (Plaintiff's Exhibit VIII). The Court agrees with the Magistrate's assessment that at no point in Ruiz's statement does he provide relevant testimony to discredit the license request or that such a requirement was unusual or unwarranted. There is also no evidence on the record to sustain Plaintiffs contention that, prior to his discharge, no other funeral attendants were required to have the PSC license, or that it was only after his discharge that Defendant began to require it of all funeral attendants. Again, the Court agrees with the Magistrate's excellent opinion that these conclusory statements are insufficient to establish an issue of material fact as to this particular. *See* Kelly v. United Sates, 924 F.2d 355, 357 (1st Cir. 1991). Therefore, the Court **ADOPTS** the

Magistrate's recommendation and **DISMISSES WITH PREJUDICE** Plaintiff's retaliation claim.

## V.  Age discrimination

Under the Age Discrimination in Employment Act (ADEA), 42 U.S.C. §§ 621-634, "it is unlawful for an employer to refuse to hire, or to discharge or to 'otherwise discriminate' against any individual with respect to 'compensation, terms, conditions, or privileges of employment, because of such individual's age." Meléndez-Arroyo v. Cutler-Hammer de Puerto Rico, Co., 273 F.3d 30, 32 (1st Cir. 2001) (quoting 29 U.S.C. § 623(a)(1)).  To prove his case, an ADEA, plaintiff can use either direct of indirect evidence, however the evidence presented "must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus'." Hidalgo v. Overseas Condado, 120 F.3d 328, 335 (1st Cir. 1997), quoting LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993).

In cases as the one before us, where plaintiff has not come forward to show any direct evidence of age discrimination, and the Court finds no such direct evidence, a plaintiff may prove defendant's discriminatory age animus using, once again, the well established *McDonnell Douglas* framework.  *See*: McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under this approach, the employee must initially come forward with sufficient evidence to establish that: (i) he is a member of a protected class (*i.e.* over forty years of age); (ii) his job performance was sufficient to meet legitimate job expectations; (iii) he experienced adverse employment action; and (iv) the employer did not treat age neutrally. Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir. 1997); Goldman v. First Nat'l. Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993).  As it may be appreciated, the required prima facie showing is not especially burdensome.  *See*: Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995); Smith v. Stratus Computer, Inc., 40 F.3d 11, 15

n. 4 (1st Cir. 1994); <u>Vega v. Kodak Caribbean, Ltd.</u>, 3 F.3d 476, 479 (1st Cir. 1993); <u>Sanchez v. Puerto Rico Oil Co.</u>, 37 F.3d 712, 719 (1st Cir. 1994).

In the instant case, in order to support his claim pursuant to the ADEA, Fuentes makes only two allegations: (1) that he is over 40 years of age, and (2) that Mr. David Ruiz, stated that Empresas Stewart wished to discharge him because of his age. Unfortunately, Empresas Stewart dispenses with this issue rather quickly in its request for *brevis disposition*. Empresas Stewart limits itself to stating that Plaintiff's ADEA claim is unfounded and that defendant "tried to keep Fuentes employed to the point were it made business sense." Considering such arguments insufficient, Magistrate Judge Gelpí recommended the denial of Defendant's request as to plaintiff's claim under ADEA. Empresas Stewart has timely objected to the Magistrate's recommendation arguing that length is not necessarily a sign of strength. Empresas Stewart avers that, although Fuentes meets the first and third prongs of the *prima facie* case (he is a member of a protected class at fifty two years of age, and suffered an adverse employment action), he cannot surmount the second prong of the test (performance expectations). Empresas Stewart attempts to move the Court to disregard the Magistrate's recommendation as to this particular issue by stating that it is quite undisputed that, despite ample opportunity to comply with a legally required condition (to acquire the PSC lisence), Plaintiff did not meet his employer's performance expectation. Thus, it is impossible to comply with the second element of his ADEA *prima facie* case.

Finally, Empresas Stewart argues, in the alternative, that even if the Court were to conclude that this issue of material fact did exist, a legitimate non-discriminatory reason exists for the discharge. Defendant argues that by the Report and Recommendation concluding that dismissal of the retaliation claim is warranted because the license requirement was also imposed on similarly situated employees, the Court cannot, then, determine that said proffer is insufficient to defeat the

ADEA *prima facie* case. Thus, the burden falls on Plaintiff to prove that the proffered non discriminatory reason is but a mere pretext, and, as such, Ruiz's statement is unreliable for Ruiz was not even an employee at the company at the time of Plaintiff's termination. Moreover, Plaintiff did not even attempt to establish evidence of differential treatment as compared to similarly situated employees.

The Court agrees with Defendant's position. It is this Court's above conclusion that, in the same manner that it found Plaintiff's *prima facie* case meritless as to the ADA claim, and that Defendant did proffer a non-pretextual, legitimate, non-discriminatory reason for the termination, Plaintiff's claim that he was discharged do to his age as insufficiently evidenced to sustain a *prima facie* showing. In the alternative, the Court understands that its previous determination that Plaintiff ill-complied with the neutrally applied job requirements – in particular, the obligation, by law, to acquire a PSC license – by never acquiring the PSC license as legitimate and non-pretextual reasoning for his termination is also applicable to Plaintiff's ADEA claim. Accordingly, The Court **REJECTS** the Magistrate's recommendation as to this particular issue and **GRANTS** Defendant's motion for *brevis disposition* as to the ADEA claim. Accordingly, Plaintiff's ADEA claims are also **DISMISSED WITH PREJUDICE**.

### VI. Conclusion

For the reasons stated above, the Court hereby **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation as to the ADA and retaliation claims, **GRANTS** Empresas Stewart's motion to dismiss as to the ADA and retaliation claim; **REJECTS** the Magistrate Judge's Report and Recommendation as to the ADEA claim, and **GRANTS** Empresas Stewart's motion for summary judgment as to the ADEA claims. Accordingly, the Court **DISMISSES WITH PREJUDICE** all

of Plaintiff's claims.  Since the Court dismissed the totality of plaintiff's federal action, pursuant to 28 U.S.C. § 1367 (c) as interpreted in  González de Blasini v. Family Department, 377 F.3d 81, 89 (1st Cir. 2004); Claudio Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 105 (1st Cir. 2004); and Rodríguez v. Doral Mortgage, 57 F.3d 1168, 1177 (1st Cir, 1995) all claims pursuant to state law are hereby **DISMISSED WITHOUT PREJUDICE**.

Judgment will be issued accordingly.

**IT IS SO ORDERED.**

Date: September 22, 2005                                                   s/ Daniel R. Dominguez
                                                                           **DANIEL R. DOMINGUEZ**
                                                                           **U.S. DISTRICT JUDGE**